Liza M. Walsh
Christine I. Gannon
Patrick S. Salamea
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center,
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
(973) 757-1100

*Attorneys for Plaintiffs*

*Of Counsel*:

Jeanna M. Wacker
Ashley L.B. Ross
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4679

Bryan S. Hales
Gregory Sanford
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| BOEHRINGER INGELHEIM PHARMACEUTICALS INC., BOEHRINGER INGELHEIM INTERNATIONAL GMBH, and BOEHRINGER INGELHEIM PHARMA GMBH & CO. KG, | ) | |
| Plaintiffs, | ) | |
| v. | ) | **Civil Action No**. ________________ |
| FDC LIMITED and FDC INC., | ) | |
| Defendants. | ) | |

**<u>COMPLAINT</u>**

Plaintiffs Boehringer Ingelheim Pharmaceuticals Inc., Boehringer Ingelheim International GmbH, and Boehringer Ingelheim Pharma GmbH & Co. KG (collectively, "Boehringer" or "Plaintiffs"), by their undersigned attorneys, for their Complaint against Defendants FDC Limited and FDC Inc. (collectively, "FDC" or "Defendants"), allege as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement arising under the Food and Drug Laws and Patent Laws of the United States, Titles 21 and 35 of the United States Code, respectively, and arises from Defendants' submission of an Abbreviated New Drug Application ("ANDA") to the Food and Drug Administration ("FDA") seeking approval to manufacture and sell a generic version of Plaintiffs' JARDIANCE® (empagliflozin) tablets prior to the expiration of United States Patent Nos. 11,090,323, 11,833,166, 12,433,906, and 12,527,810.

## THE PARTIES

2. Plaintiff Boehringer Ingelheim Pharmaceuticals Inc. ("BIPI") is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 900 Ridgebury Rd., Ridgefield, CT 06877.

3. Plaintiff Boehringer Ingelheim International GmbH ("BII") is a private limited liability company organized and existing under the laws of Germany, having a principal place of business at Binger Strasse 173, 55216 Ingelheim am Rhein, Germany.

4. Plaintiff Boehringer Ingelheim Pharma GmbH & Co. KG ("BIPKG") is a limited partnership organized and existing under the laws of Germany, having a principal place of business at Binger Strasse 173, 55216 Ingelheim am Rhein, Germany.

5. BIPI, BII, and BIPKG are collectively referred to hereinafter as "Boehringer" or "Plaintiffs."

6. On information and belief, Defendant FDC Limited is a corporation organized and existing under the laws of India, having a principal place of business at FDC House C-11 & 12, Dalia Industrial Estate, Oshiwara Village, Off New Link Road, Andheri (West), Mumbai, India 400 053.

7. On information and belief, Defendant FDC Inc. is a corporation organized and existing under the laws of New Jersey, having a principal place of business at 315 Lowell Avenue, Hamilton, NJ 08619. FDC Inc. is registered to do business in the State of New Jersey.

8. On information and belief, FDC Inc. is a wholly owned subsidiary of FDC Limited.

9. On information and belief, the acts of FDC Limited complained of herein were done with the cooperation, participation, and assistance of FDC Inc.

10. FDC Limited and FDC Inc. are referred to hereinafter as "FDC" or "Defendants."

11. On information and belief, FDC is in the business of, among other things, developing, preparing, manufacturing, selling, marketing, and distributing generic drugs, including distributing, selling, and marketing generic drugs throughout the United States, including within the State of New Jersey, through its own actions and through the actions of its agents and subsidiaries, from which FDC derives a substantial portion of its revenue.

12. On information and belief, FDC prepared and submitted ANDA No. 220862 (the "FDC ANDA") for FDC's 10 mg and 25 mg empagliflozin tablets (the "FDC ANDA Products").

13. On information and belief, FDC intends to commercially manufacture, market, offer for sale, and sell the FDC ANDA Products throughout the United States, including in the State of New Jersey, in the event the FDA approves the FDC ANDA.

## JURISDICTION AND VENUE

14. This action arises under the patent laws of the United States, 35 U.S.C. §§ 100 *et seq.*, generally, and 35 U.S.C. § 271(e)(2), specifically, and this Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

15. Venue is proper in this Court as to FDC Limited because, among other things, FDC Limited is an Indian corporation not residing in any United States district and may be sued in any

judicial district. 28 U.S.C. § 1391(c). Venue is proper in this Court as to FDC Inc. because it is a corporation incorporated in the State of New Jersey. 28 U.S.C. § 1400(b).

**PERSONAL JURISDICTION OVER FDC**

16. On information and belief, FDC develops, manufactures, and/or distributes generic drugs for sale and use throughout the United States, including in this judicial district.

17. This Court has personal jurisdiction over FDC Limited because, *inter alia*, FDC Limited, on information and belief: (1) has substantial, continuous, and systematic contacts with this State, either directly or through at least one of its wholly owned subsidiaries or agents; (2) intends to market, sell, and/or distribute the infringing FDC ANDA Products to residents of this State upon approval of ANDA No. 220862, at least through its wholly owned subsidiaries or agents; and (3) enjoys substantial income from sales of its generic pharmaceutical products in this State on its own and through at least one of its wholly owned subsidiaries or agents.

18. Alternatively, to the extent the above facts do not establish personal jurisdiction over FDC Limited, this Court may exercise jurisdiction over FDC Limited pursuant to Fed. R. Civ. P. 4(k)(2) because: (1) Plaintiffs' claims arise under federal law; (2) FDC Limited would be a foreign defendant not subject to personal jurisdiction in the courts of any State; and (3) FDC Limited has sufficient contacts with the United States as a whole, including, but not limited to, filing an ANDA with the FDA and manufacturing and selling generic pharmaceutical products that are distributed throughout the United States, such that this Court's exercise of jurisdiction over FDC Limited satisfies due process.

19. This Court has personal jurisdiction over FDC Inc. because FDC Inc. is a corporation incorporated under the laws of the State of New Jersey.

## THE PATENTS-IN-SUIT

### U.S. PATENT NO. 11,090,323

20. On August 17, 2021, the USPTO duly and legally issued United States Patent No. 11,090,323 ("the '323 Patent") entitled "Pharmaceutical composition, methods for treating and uses thereof" to inventors Uli Christian Broedl, Sreeraj Macha, Maximilian von Eynatten, and Hans-Juergen Woerle. A true and correct copy of the '323 Patent is attached as Exhibit A. Boehringer is the owner of all right, title, and interest in and to the '323 Patent, including the right to sue for infringement.

### U.S. PATENT NO. 11,833,166

21. On December 5, 2023, the USPTO duly and legally issued United States Patent No. 11,833,166 ("the '166 Patent") entitled "Pharmaceutical composition, methods for treating and uses thereof" to inventors Uli Christian Broedl, Sreeraj Macha, Maximilian von Eynatten, and Hans-Juergen Woerle. A true and correct copy of the '166 Patent is attached as Exhibit B. Boehringer is the owner of all right, title, and interest in and to the '166 Patent, including the right to sue for infringement.

### U.S. PATENT NO. 12,433,906

22. On October 7, 2025, the USPTO duly and legally issued United States Patent No. 12,433,906 ("the '906 Patent") entitled "Pharmaceutical composition, methods for treating and uses thereof" to inventors Uli Christian Broedl, Sreeraj Macha, Maximilian von Eynatten, and Hans-Juergen Woerle. A true and correct copy of the '906 Patent is attached as Exhibit C. Boehringer is the owner of all right, title, and interest in and to the '906 Patent, including the right to sue for infringement.

**U.S. PATENT NO. 12,527,810**

23. On January 20, 2026, the USPTO duly and legally issued United States Patent No. 12,527,810 ("the '810 Patent") entitled "Pharmaceutical composition, methods for treating and uses thereof" to inventors Peter Eickelmann, Michael Mark, Leo John Seman, Leo Thomas, Uli Christian Broedl, and Rolf Grempler. A true and correct copy of the '810 Patent is attached as Exhibit D. Boehringer is the owner of all right, title, and interest in and to the '810 Patent, including the right to sue for infringement.

**JARDIANCE®**

24. BIPI is the holder of New Drug Application ("NDA") No. 204629 for empagliflozin, for oral use, in 10 mg and 25 mg strengths, which is sold under the trade name JARDIANCE®. A true and correct copy of the current JARDIANCE® label is attached as Exhibit E.

25. Pursuant to 21 U.S.C. § 355(b)(1), and attendant FDA regulations, the '323, '166, '906, and '810 Patents are listed in the FDA's Approved Drug Products with Therapeutic Equivalence Evaluations database ("Orange Book") with respect to JARDIANCE®.

26. The '323, '166, '906, and '810 Patents cover the pharmaceutical composition and use of JARDIANCE®.

**FDC'S ANDA**

27. On information and belief, FDC submitted the FDC ANDA to the FDA, pursuant to 21 U.S.C. § 355(j), seeking approval to market the FDC ANDA Products.

28. On information and belief, the FDC ANDA refers to and relies upon the JARDIANCE® NDA and contains data that, according to FDC, demonstrates the bioequivalence of the FDC ANDA Products to JARDIANCE®.

29. By filing ANDA No. 220862, FDC has necessarily represented to the FDA that the FDC ANDA Products have the same active ingredient, method of administration, dosage form, and dosage amount as JARDIANCE® tablets, and will be bioequivalent to JARDIANCE®.

30. Plaintiffs received a letter from FDC on or about July 9, 2026 (the "FDC Letter") stating that FDC had included certification in the FDC ANDA, pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV), that, *inter alia*, certain claims of the '323, '166, and '810 Patents are either invalid or will not be infringed by the commercial manufacture, use, importation, offer for sale, and/or sale of the FDC ANDA Products (the "FDC Paragraph IV Certification").

31. In the FDC Letter, FDC does not dispute that the FDC ANDA Products will infringe the claims of the '323, '166, and '810 Patents.

32. The FDC Letter offered confidential access to unspecified portions of the FDC ANDA ("Offer of Confidential Access" or "OCA") on terms and conditions set by FDC. FDC requested that Plaintiffs accept the terms of the OCA before receiving access to the unspecified portions of the FDC ANDA.

33. Under 21 U.S.C. § 355(j)(5)(C)(i)(III), an offer of confidential access "shall contain such restrictions as to persons entitled to access, and on the use and disposition of any information accessed, as would apply had a protective order been entered for the purpose of protecting trade secrets and other confidential business information."

34. Since receiving the FDC Letter, Plaintiffs have attempted to negotiate with FDC to obtain a copy of the FDC ANDA. These negotiations were unsuccessful. FDC refused to provide its ANDA to Boehringer on reasonable terms.

35. Under the Hatch-Waxman Act, an owner of a patented drug must file an action in federal court within 45 days of receiving a Paragraph IV letter in order to receive certain benefits

under the Act, including a stay of approval of the generic drug for 30 months during the pendency of litigation, as appropriate. 21 U.S.C. § 355(j)(5)(B)(iii). FDC's refusal to produce its ANDA has hindered Boehringer's ability to consider information that may be relevant to its infringement analysis of the '323, '166, and '810 Patents. *See Hoffmann-La Roche Inc. v. Invamed, Inc.*, 213 F.3d 1359, 1363–64 (Fed. Cir. 2000).

36. FDC intends to engage in the commercial manufacture, use, importation, offer for sale, and/or sale of the FDC ANDA Products prior to the expiration of the '323, '166, '906, and '810 Patents.

**COUNT I—INFRINGEMENT OF THE '323 PATENT**

37. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1–36 as if fully set forth herein.

38. As an example, claim 25 of the '323 Patent recites: "25. A method for improving glycemic control in a patient with type 2 diabetes mellitus comprising administering empagliflozin to the patient if the eGFR of the patient is ≥30 ml/min/1.73 $m^2$ and <60 ml/min/1.73 $m^2$, wherein empagliflozin is administered orally in a total daily amount of 10 mg or 25 mg, wherein the glycemic control in said patient is improved, and discontinuing empagliflozin if the eGFR of the patient falls below 30 ml/min/1.73 $m^2$."

39. The JARDIANCE® label provides the following indication (the "Improved Glycemic Control Indication"): "JARDIANCE is a sodium-glucose co-transporter 2 (SGLT2) inhibitor indicated: … As an adjunct to diet and exercise to improve glycemic control in adults and pediatric patients aged 10 years and older with type 2 diabetes mellitus." Ex. E at 1.

40. The JARDIANCE® label further provides the following limitation of use: "Not recommended for use to improve glycemic control in patients with type 2 diabetes mellitus with an eGFR less than 30 mL/min/1.73 $m^2$." Ex. E at 1.

41. The JARDIANCE® label further provides the following recommended dosages:

**Table 1 Recommended Dosage of JARDIANCE**

| **Population** | **Indication** | **Recommended Dosage** |
|---|---|---|
| Adults | Reduce the risk of cardiovascular death and hospitalization in patients with heart failure | • 10 mg orally once daily in the morning, taken with or without food. |
| | Reduce the risk of sustained decline in eGFR, end-stage kidney disease, cardiovascular death, and hospitalization in adults with chronic kidney disease at risk of progression. | |
| | Reduce the risk of cardiovascular death in patients with type 2 diabetes mellitus with established cardiovascular disease | |
| | Glycemic control in type 2 diabetes mellitus | • 10 mg orally once daily in the morning, taken with or without food.<br>• For additional glycemic control, may increase to 25 mg orally once daily in patients tolerating 10 mg once daily. |
| Pediatric patients aged 10 years and older | Glycemic control in type 2 diabetes mellitus | • 10 mg orally once daily in the morning, taken with or without food.<br>• For additional glycemic control, may increase to 25 mg orally once daily in patients tolerating 10 mg once daily. |

Ex. E at 4.

42. The JARDIANCE® label further includes, *inter alia*, the following clinical trial information:

> Renal Impairment
> A total of 738 patients with type 2 diabetes mellitus and a baseline eGFR less than 90 mL/min/1.73 $m^2$ participated in a randomized, double-blind, placebo-controlled, parallel-group trial to evaluate the efficacy of JARDIANCE in patients with type 2 diabetes mellitus and renal impairment. The trial population comprised of 290 patients with mild renal impairment (eGFR 60 to less than 90 mL/min/1.73 $m^2$), 374 patients with moderate renal impairment (eGFR 30 to less than 60 mL/min/1.73 $m^2$), and 74 with severe renal impairment (eGFR less than 30 mL/min/1.73 $m^2$). A total of 194 patients with moderate renal impairment had a baseline eGFR of 30 to less than 45 mL/min/1.73 $m^2$ and 180 patients had a baseline eGFR of 45 to less than 60 mL/min/1.73 $m^2$.
>
> At Week 24, JARDIANCE 25 mg provided statistically significant reduction in HbA1c relative to placebo in patients with mild to moderate renal impairment (see Table 13). A statistically significant reduction relative to placebo was also observed with JARDIANCE 25 mg in patients with either mild [-0.7 (95% CI: -0.9, -0.5)] or moderate [-0.4 (95% CI: -0.6, -0.3)] renal impairment and with JARDIANCE 10 mg in patients with mild [-0.5 (95% CI: -0.7, -0.3)] renal impairment.

The glucose lowering efficacy of JARDIANCE 25 mg decreased with decreasing level of renal function in the mild to moderate range. Least square mean HbA1c changes at 24 weeks were -0.6%, -0.5%, and -0.2% for those with a baseline eGFR of 60 to less than 90 mL/min/1.73 $m^2$, 45 to less than 60 mL/min/1.73 $m^2$, and 30 to less than 45 mL/min/1.73 $m^2$, respectively *[see Dosage and Administration (2) and Use in Specific Populations (8.6)]*. For placebo, least square mean HbA1c changes at 24 weeks were 0.1%, -0.1%, and 0.2% for patients with a baseline eGFR of 60 to less than 90 mL/min/1.73 $m^2$, 45 to less than 60 mL/min/1.73 $m^2$, and 30 to less than 45 mL/min/1.73 $m^2$, respectively.

**Table 13 Results at Week 24 (LOCF) of Placebo-Controlled Trial for JARDIANCE in Adults with Type 2 Diabetes Mellitus and Renal Impairment**

| | **Mild and Moderate Impairment[b]** |
|---|---|
| | **JARDIANCE 25 mg** |
| **HbA1c** | |
| Number of patients | n=284 |
| Comparison vs placebo (adjusted mean) (95% CI) | -0.5[a] (-0.6, -0.4) |

[a]p-value <0.0001 (HbA1c: ANCOVA model includes baseline HbA1c, treatment, renal function, and background medication)
[b]eGFR 30 to less than 90 mL/min/1.73 $m^2$ - Modified intent-to-treat population. Last observation on trial (LOCF) was used to impute missing data at Week 24. At Week 24, 24.6% and 26.2% was imputed for patients randomized to JARDIANCE 25 mg and placebo, respectively.

For patients with severe renal impairment, the analyses of changes in HbA1c and FPG showed no discernible treatment effect of JARDIANCE 25 mg compared to placebo *[see Indications and Usage (1), Dosage and Administration (2.1, 2.2) and Use in Specific Populations (8.6)]*.

Ex. E at 29–30.

43. The FDC Letter indicates that the FDC ANDA Products are empagliflozin tablets for oral administration, 10 mg and 25 mg strengths.

44. On information and belief, and in view of the FDC Paragraph IV Certification, FDC's proposed labeling for the FDC ANDA Products includes the Improved Glycemic Control Indication on the JARDIANCE® label, as well as the dosage, administration, clinical trials, and other information relating thereto.

45. FDC has infringed at least one claim of the '323 Patent, pursuant to 35 U.S.C. § 271(e)(2)(A), by submitting, or causing to be submitted, the FDC ANDA, by which FDC seeks approval from the FDA to engage in the manufacture, use, offer to sell, sale, or importation of the FDC ANDA Products prior to the expiration of the '323 Patent. *See Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*, 731 F.3d 1271, 1278 (Fed. Cir. 2013).

46. FDC has declared its intent to manufacture, use, offer to sell, or sell in the United States or to import into the United States, the FDC ANDA Products in the event that the FDA

approves the FDC ANDA. Accordingly, an actual and immediate controversy exists regarding FDC's infringement of the '323 Patent under 35 U.S.C. § 271(b).

47. FDC's manufacture, use, offer to sell, or sale of the FDC ANDA Products in the United States or importation of the FDC ANDA Products into the United States during the term of the '323 Patent would infringe at least one claim of the '323 Patent under 35 U.S.C. § 271(b).

48. The FDC ANDA Products, when offered for sale, sold, and/or imported, and when used as directed, would be used in a manner that would directly infringe at least one of the claims of the '323 Patent either literally or under the doctrine of equivalents.

49. FDC had knowledge of the '323 Patent as demonstrated by the FDC Paragraph IV Certification directed to the '323 Patent.

50. In view of at least its package inserts for the FDC ANDA Products, FDC knows or should know that it will induce another's direct infringement of at least one of the claims of the '323 Patent, either literally or under the doctrine of equivalents.

51. On information and belief, FDC's proposed prescribing label for the FDC ANDA Products affirmatively instructs healthcare providers to use the FDC ANDA Products in a manner that would directly infringe at least one of the claims of the '323 Patent, either literally or under the doctrine of equivalents. By including such instructions in its proposed label, FDC has taken active steps to encourage direct infringement of the '323 Patent with knowledge that the induced acts constitute patent infringement.

52. On information and belief, FDC's proposed label affirmatively instructs healthcare providers to use the FDC ANDA Products for the patented methods of use claimed in the '323 Patent. By including these affirmative instructions, the offering to sell, sale, and/or importation of

the FDC ANDA Products into the United States by FDC would actively induce infringement of at least one of the claims of the '323 Patent, either literally or under the doctrine of equivalents.

53. On information and belief, the offering to sell, sale, and/or importation of the FDC ANDA Products into the United States by FDC would actively induce infringement of at least one of the claims of the '323 Patent, either literally or under the doctrine of equivalents.

54. In the FDC Letter, FDC does not deny that the FDC ANDA Products will infringe the claims of the '323 Patent.

55. The FDC ANDA Products will infringe one or more claims of the '323 Patent.

56. Plaintiffs will be substantially and irreparably harmed if FDC is not enjoined from infringing the '323 Patent.

**COUNT II—INFRINGEMENT OF THE '166 PATENT**

57. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1–36 as if fully set forth herein.

58. As an example, claim 13 of the '166 Patent recites:

> 13. A method for improving glycemic control in a patient with type 2 diabetes mellitus comprising:
>
> a) assessing the renal function of the patient; and
>
> b) administering empagliflozin to the patient if the eGFR of the patient is $\geq$30 ml/min/1.73 $m^2$ and <60 ml/min/1.73 $m^2$,
>
> wherein empagliflozin is administered orally in a total daily amount of 10 mg or 25 mg, and
>
> wherein the glycemic control in said patient is improved.

59. The JARDIANCE® label provides the following indication (the "Improved Glycemic Control Indication"): "JARDIANCE is a sodium-glucose co-transporter 2 (SGLT2)

inhibitor indicated: … As an adjunct to diet and exercise to improve glycemic control in adults and pediatric patients aged 10 years and older with type 2 diabetes mellitus." Ex. E at 1.

60. The JARDIANCE® label further provides the following limitation of use: "Not recommended for use to improve glycemic control in patients with type 2 diabetes mellitus with an eGFR less than 30 mL/min/1.73 $m^2$." Ex. E at 1.

61. The JARDIANCE® label further provides the following recommended dosages:

**Table 1 Recommended Dosage of JARDIANCE**

| Population | Indication | Recommended Dosage |
|---|---|---|
| Adults | Reduce the risk of cardiovascular death and hospitalization in patients with heart failure | • 10 mg orally once daily in the morning, taken with or without food. |
| | Reduce the risk of sustained decline in eGFR, end-stage kidney disease, cardiovascular death, and hospitalization in adults with chronic kidney disease at risk of progression. | |
| | Reduce the risk of cardiovascular death in patients with type 2 diabetes mellitus with established cardiovascular disease | |
| | Glycemic control in type 2 diabetes mellitus | • 10 mg orally once daily in the morning, taken with or without food.<br>• For additional glycemic control, may increase to 25 mg orally once daily in patients tolerating 10 mg once daily. |
| Pediatric patients aged 10 years and older | Glycemic control in type 2 diabetes mellitus | • 10 mg orally once daily in the morning, taken with or without food.<br>• For additional glycemic control, may increase to 25 mg orally once daily in patients tolerating 10 mg once daily. |

Ex. E at 4.

62. The JARDIANCE® label further includes, *inter alia*, the following clinical trial information:

> Renal Impairment
> A total of 738 patients with type 2 diabetes mellitus and a baseline eGFR less than 90 mL/min/1.73 $m^2$ participated in a randomized, double-blind, placebo-controlled, parallel-group trial to evaluate the efficacy of JARDIANCE in patients with type 2 diabetes mellitus and renal impairment. The trial population comprised of 290 patients with mild renal impairment (eGFR 60 to less than 90 mL/min/1.73 $m^2$), 374 patients with moderate renal impairment (eGFR 30 to less than 60 mL/min/1.73 $m^2$), and 74 with severe renal impairment (eGFR less than 30 mL/min/1.73 $m^2$). A total of 194 patients with moderate renal impairment had a baseline eGFR of 30 to less than 45 mL/min/1.73 $m^2$ and 180 patients had a baseline eGFR of 45 to less than 60 mL/min/1.73 $m^2$.
>
> At Week 24, JARDIANCE 25 mg provided statistically significant reduction in HbA1c relative to placebo in patients with mild to moderate renal impairment (see Table 13). A statistically significant reduction relative to placebo was also observed with JARDIANCE 25 mg in patients with either mild [-0.7 (95% CI: -0.9, -0.5)] or moderate [-0.4 (95% CI: -0.6, -0.3)] renal impairment and with JARDIANCE 10 mg in patients with mild [-0.5 (95% CI: -0.7, -0.3)] renal impairment.

The glucose lowering efficacy of JARDIANCE 25 mg decreased with decreasing level of renal function in the mild to moderate range. Least square mean HbA1c changes at 24 weeks were -0.6%, -0.5%, and -0.2% for those with a baseline eGFR of 60 to less than 90 mL/min/1.73 $m^2$, 45 to less than 60 mL/min/1.73 $m^2$, and 30 to less than 45 mL/min/1.73 $m^2$, respectively *[see Dosage and Administration (2) and Use in Specific Populations (8.6)]*. For placebo, least square mean HbA1c changes at 24 weeks were 0.1%, -0.1%, and 0.2% for patients with a baseline eGFR of 60 to less than 90 mL/min/1.73 $m^2$, 45 to less than 60 mL/min/1.73 $m^2$, and 30 to less than 45 mL/min/1.73 $m^2$, respectively.

**Table 13 Results at Week 24 (LOCF) of Placebo-Controlled Trial for JARDIANCE in Adults with Type 2 Diabetes Mellitus and Renal Impairment**

| | Mild and Moderate Impairment[b] |
|---|---|
| | JARDIANCE 25 mg |
| **HbA1c** | |
| Number of patients | n=284 |
| Comparison vs placebo (adjusted mean) (95% CI) | -0.5[a] (-0.6, -0.4) |

[a]p-value <0.0001 (HbA1c: ANCOVA model includes baseline HbA1c, treatment, renal function, and background medication)
[b]eGFR 30 to less than 90 mL/min/1.73 $m^2$ - Modified intent-to-treat population. Last observation on trial (LOCF) was used to impute missing data at Week 24. At Week 24, 24.6% and 26.2% was imputed for patients randomized to JARDIANCE 25 mg and placebo, respectively.

For patients with severe renal impairment, the analyses of changes in HbA1c and FPG showed no discernible treatment effect of JARDIANCE 25 mg compared to placebo *[see Indications and Usage (1), Dosage and Administration (2.1, 2.2) and Use in Specific Populations (8.6)]*.

Ex. E at 29–30.

63. The FDC Letter indicates that the FDC ANDA Products are empagliflozin tablets for oral administration, 10 mg and 25 mg strengths.

64. On information and belief, and in view of the FDC Paragraph IV Certification, FDC's proposed labeling for the FDC ANDA Products includes the Improved Glycemic Control Indication on the JARDIANCE® label, as well as the dosage, administration, clinical trial, and other information relating thereto.

65. FDC has infringed at least one claim of the '166 Patent, pursuant to 35 U.S.C. § 271(e)(2)(A), by submitting, or causing to be submitted, the FDC ANDA, by which FDC seeks approval from the FDA to engage in the manufacture, use, offer to sell, sale, or importation of the FDC ANDA Products prior to the expiration of the '166 Patent. *See Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*, 731 F.3d 1271, 1278 (Fed. Cir. 2013).

66. FDC has declared its intent to manufacture, use, offer to sell, or sell in the United States or to import into the United States, the FDC ANDA Products in the event that the FDA

approves the FDC ANDA. Accordingly, an actual and immediate controversy exists regarding FDC's infringement of the '166 Patent under 35 U.S.C. § 271(b).

67. FDC's manufacture, use, offer to sell, or sale of the FDC ANDA Products in the United States or importation of the FDC ANDA Products into the United States during the term of the '166 Patent would infringe at least one claim of the '166 Patent under 35 U.S.C. § 271(b).

68. The FDC ANDA Products, when offered for sale, sold, and/or imported, and when used as directed, would be used in a manner that would directly infringe at least one of the claims of the '166 Patent either literally or under the doctrine of equivalents.

69. FDC had knowledge of the '166 Patent as demonstrated by the FDC Paragraph IV Certification directed to the '166 Patent.

70. In view of at least its package inserts for the FDC ANDA Products, FDC knows or should know that it will induce another's direct infringement of at least one of the claims of the '166 Patent, either literally or under the doctrine of equivalents.

71. On information and belief, FDC's proposed prescribing label for the FDC ANDA Products affirmatively instructs healthcare providers to use the FDC ANDA Products in a manner that would directly infringe at least one of the claims of the '166 Patent, either literally or under the doctrine of equivalents. By including such instructions in its proposed label, FDC has taken active steps to encourage direct infringement of the '166 Patent with knowledge that the induced acts constitute patent infringement.

72. On information and belief, FDC's proposed label affirmatively instructs healthcare providers to use the FDC ANDA Products for the patented methods of use claimed in the '166 Patent. By including these affirmative instructions, the offering to sell, sale, and/or importation of

the FDC ANDA Products into the United States by FDC would actively induce infringement of at least one of the claims of the '166 Patent, either literally or under the doctrine of equivalents.

73. On information and belief, the offering to sell, sale, and/or importation of the FDC ANDA Products into the United States by FDC would actively induce infringement of at least one of the claims of the '166 Patent, either literally or under the doctrine of equivalents.

74. In the FDC Letter, FDC does not deny that the FDC ANDA Products will infringe the claims of the '166 Patent.

75. The FDC ANDA Products will infringe one or more claims of the '166 Patent.

76. Plaintiffs will be substantially and irreparably harmed if FDC is not enjoined from infringing the '166 Patent.

**COUNT III—INFRINGEMENT OF THE '906 PATENT**

77. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1–76 as if fully set forth herein.

78. As an example, claim 31 of the '906 Patent recites:

> A method of treating type 2 diabetes comprising:
>
> a) determining the glomerular filtration rate (eGFR) of a patient in need of treatment for type 2 diabetes; and
>
> b) administering empagliflozin to the patient, if the eGFR of the patient is ≥30 ml/min/1.73 m2 and <60 ml/min/1.73 $m^2$.

79. The JARDIANCE® label provides the following indication (the "Improved Glycemic Control Indication"): "JARDIANCE is a sodium-glucose co-transporter 2 (SGLT2) inhibitor indicated: … As an adjunct to diet and exercise to improve glycemic control in adults and pediatric patients aged 10 years and older with type 2 diabetes mellitus." Ex. E at 1.

80. The JARDIANCE® label further provides the following limitation of use: "Not recommended for use to improve glycemic control in patients with type 2 diabetes mellitus with an eGFR less than 30 mL/min/1.73 m$^2$." Ex. E at 1.

81. The JARDIANCE® label further includes, *inter alia*, the following clinical trial information:

Renal Impairment

A total of 738 patients with type 2 diabetes mellitus and a baseline eGFR less than 90 mL/min/1.73 m$^2$ participated in a randomized, double-blind, placebo-controlled, parallel-group trial to evaluate the efficacy of JARDIANCE in patients with type 2 diabetes mellitus and renal impairment. The trial population comprised of 290 patients with mild renal impairment (eGFR 60 to less than 90 mL/min/1.73 m$^2$), 374 patients with moderate renal impairment (eGFR 30 to less than 60 mL/min/1.73 m$^2$), and 74 with severe renal impairment (eGFR less than 30 mL/min/1.73 m$^2$). A total of 194 patients with moderate renal impairment had a baseline eGFR of 30 to less than 45 mL/min/1.73 m$^2$ and 180 patients had a baseline eGFR of 45 to less than 60 mL/min/1.73 m$^2$.

At Week 24, JARDIANCE 25 mg provided statistically significant reduction in HbA1c relative to placebo in patients with mild to moderate renal impairment (see Table 13). A statistically significant reduction relative to placebo was also observed with JARDIANCE 25 mg in patients with either mild [-0.7 (95% CI: -0.9, -0.5)] or moderate [-0.4 (95% CI: -0.6, -0.3)] renal impairment and with JARDIANCE 10 mg in patients with mild [-0.5 (95% CI: -0.7, -0.3)] renal impairment.

The glucose lowering efficacy of JARDIANCE 25 mg decreased with decreasing level of renal function in the mild to moderate range. Least square mean HbA1c changes at 24 weeks were -0.6%, -0.5%, and -0.2% for those with a baseline eGFR of 60 to less than 90 mL/min/1.73 m$^2$, 45 to less than 60 mL/min/1.73 m$^2$, and 30 to less than 45 mL/min/1.73 m$^2$, respectively *[see Dosage and Administration (2) and Use in Specific Populations (8.6)]*. For placebo, least square mean HbA1c changes at 24 weeks were 0.1%, -0.1%, and 0.2% for patients with a baseline eGFR of 60 to less than 90 mL/min/1.73 m$^2$, 45 to less than 60 mL/min/1.73 m$^2$, and 30 to less than 45 mL/min/1.73 m$^2$, respectively.

**Table 13 Results at Week 24 (LOCF) of Placebo-Controlled Trial for JARDIANCE in Adults with Type 2 Diabetes Mellitus and Renal Impairment**

| | Mild and Moderate Impairment[b] |
|---|---|
| | **JARDIANCE 25 mg** |
| **HbA1c** | |
| Number of patients | n=284 |
| Comparison vs placebo (adjusted mean) (95% CI) | -0.5[a] (-0.6, -0.4) |

[a]p-value <0.0001 (HbA1c: ANCOVA model includes baseline HbA1c, treatment, renal function, and background medication)
[b]eGFR 30 to less than 90 mL/min/1.73 m$^2$ - Modified intent-to-treat population. Last observation on trial (LOCF) was used to impute missing data at Week 24. At Week 24, 24.6% and 26.2% was imputed for patients randomized to JARDIANCE 25 mg and placebo, respectively.

For patients with severe renal impairment, the analyses of changes in HbA1c and FPG showed no discernible treatment effect of JARDIANCE 25 mg compared to placebo *[see Indications and Usage (1), Dosage and Administration (2.1, 2.2) and Use in Specific Populations (8.6)]*.

Ex. E at 29–30.

82. On information and belief, and in view of the FDC Paragraph IV Certification, FDC's proposed labeling for the FDC ANDA Products includes the Improved Glycemic Control Indication on the JARDIANCE® label, as well as the dosage, administration, clinical trial, and other information relating thereto.

83. FDC has infringed at least one claim of the ’906 Patent, pursuant to 35 U.S.C. § 271(e)(2)(A), by submitting, or causing to be submitted, the FDC ANDA, by which FDC seeks approval from the FDA to engage in the manufacture, use, offer to sell, sale, or importation of the FDC ANDA Products prior to the expiration of the ’906 Patent. *See Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*, 731 F.3d 1271, 1278 (Fed. Cir. 2013).

84. FDC has declared its intent to manufacture, use, offer to sell, or sell in the United States or to import into the United States, the FDC ANDA Products in the event that the FDA approves the FDC ANDA. Accordingly, an actual and immediate controversy exists regarding FDC’s infringement of the ’906 Patent under 35 U.S.C. § 271(b).

85. FDC’s manufacture, use, offer to sell, or sale of the FDC ANDA Products in the United States or importation of the FDC ANDA Products into the United States during the term of the ’906 Patent would infringe at least one claim of the ’906 Patent under 35 U.S.C. § 271(b).

86. The FDC ANDA Products, when offered for sale, sold, and/or imported, and when used as directed, would be used in a manner that would directly infringe at least one of the claims of the ’906 Patent either literally or under the doctrine of equivalents.

87. On information and belief, FDC had knowledge of the ’906 Patent.

88. In view of at least its package inserts for the FDC ANDA Products, FDC knows or should know that it will induce another’s direct infringement of at least one of the claims of the ’906 Patent, either literally or under the doctrine of equivalents.

89. On information and belief, FDC’s proposed prescribing label for the FDC ANDA Products affirmatively instructs healthcare providers to use the FDC ANDA Products in a manner that would directly infringe at least one of the claims of the ’906 Patent, either literally or under the doctrine of equivalents. By including such instructions in its proposed label, FDC has taken

active steps to encourage direct infringement of the ’906 Patent with knowledge that the induced acts constitute patent infringement.

90. On information and belief, FDC’s proposed label affirmatively instructs healthcare providers to use the FDC ANDA Products for the patented methods of use claimed in the ’906 Patent. By including these affirmative instructions, the offering to sell, sale, and/or importation of the FDC ANDA Products into the United States by FDC would actively induce infringement of at least one of the claims of the ’906 Patent, either literally or under the doctrine of equivalents.

91. On information and belief, the offering to sell, sale, and/or importation of the FDC ANDA Products into the United States by FDC would actively induce infringement of at least one of the claims of the ’906 Patent, either literally or under the doctrine of equivalents.

92. The FDC ANDA Products will infringe one or more claims of the ’906 Patent.

93. Plaintiffs will be substantially and irreparably harmed if FDC is not enjoined from infringing the ’906 Patent.

**COUNT IV—INFRINGEMENT OF THE ’810 PATENT**

94. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1–36 as if fully set forth herein.

95. As an example, claim 1 of the ’810 Patent recites: “1. A method for improving glycemic control in an adolescent patient having type 2 diabetes mellitus, the method comprising orally administering a therapeutically effective amount of 1-chloro-4-(β-D-glucopyranos-1-yl)-2-[4-((S)-tetrahydrofuran-3-yloxy)-benzyl]-benzene to the patient, wherein the adolescent patient is age 10 years to 17 years.”

96. The JARDIANCE® label provides the following indication (the “Improved Glycemic Control Indication”): “JARDIANCE is a sodium-glucose co-transporter 2 (SGLT2)

inhibitor indicated: … As an adjunct to diet and exercise to improve glycemic control in adults and pediatric patients aged 10 years and older with type 2 diabetes mellitus." Ex. E at 1.

97. The JARDIANCE® label further includes, *inter alia*, the following clinical trial information:

**14.2 Glycemic Control Trial in Pediatric Patients Aged 10 to 17 Years with Type 2 Diabetes Mellitus**
*DINAMO* (NCT03429543) was a 26-week, double-blind, randomized, placebo-controlled, parallel group trial, with a double-blind active treatment safety extension period up to 52 weeks to assess the efficacy of JARDIANCE. The trial enrolled pediatric patients aged 10 to 17 years with inadequately controlled type 2 diabetes mellitus (HbA1c 6.5 to 10.5%). Patients treated with metformin (at least 1,000 mg daily or maximally tolerated dose), with or without insulin therapy, and those with a history of intolerance to metformin therapy were enrolled. Patients were randomized to 3 treatment arms (JARDIANCE 10 mg, a dipeptidyl peptidase-4 (DPP-4) inhibitor or placebo), over 26 weeks. Patients in the JARDIANCE 10 mg group who failed to achieve HbA1c <7.0% at Week 12 underwent a second randomization at Week 14 to remain on the 10 mg dose or increase to 25 mg. Patients on placebo were re-randomized at Week 26 to one of the JARDIANCE doses (10 mg or 25 mg) or a DPP-4 inhibitor.

A total of 157 patients were treated with either JARDIANCE (10 mg or 25 mg; N=52), a DPP-4 inhibitor (N=52), or placebo (N=53). Background therapies as adjunct to diet and exercise included metformin (51%), a combination of metformin and insulin (40.1%), insulin (3.2%), or none (5.7%). The mean HbA1c at baseline was 8.0% and the mean duration of type 2 diabetes mellitus was 2.1 years. The mean age was 14.5 years (range: 10-17 years) and 51.6% were aged 15 years and older. Approximately, 50% were White, 6% were Asian, 31% were Black or African American, and 38% were of Hispanic or Latino ethnicity. The mean BMI was 36.0 $kg/m^2$ and mean BMI Z-score was 3.0. Patients with an eGFR less than 60 mL/min/1.73 $m^2$ were not enrolled in the trial. Approximately 25% of the study population had microalbuminuria or macroalbuminuria.

At Week 26, treatment with JARDIANCE was superior in reducing HbA1c from baseline versus placebo (see Table 14).

**Table 14 Results at Week 26 for a Placebo-Controlled Trial for JARDIANCE in Combination with Metformin and/or Insulin or as Monotherapy in Pediatric Patients Aged 10 to 17 Years with Type 2 Diabetes Mellitus[a]**

| | JARDIANCE 10 mg and 25 mg | Placebo |
|---|---|---|
| **HbA1c (%)[b]** | | |
| Number of patients | n=52 | n=53 |
| Baseline (mean) | 8.0 | 8.1 |
| Change from baseline[c] | -0.2 | 0.7 |
| Difference from placebo[c] (95% CI) | -0.8[e] (-1.5, -0.2) | -- |
| **FPG (mg/dL)[b,d]** | | |
| Number of patients | n=48 | n=52 |
| Baseline (mean) | 154 | 159 |
| Change from baseline[c] | -19 | 17 |
| Difference from placebo[c] (95% CI) | -36 (-60.7, -10.7) | -- |

[a]Modified intent-to-treat set (All randomized and treated patients with baseline measurement).
[b]Multiple imputations using placebo wash-out approach with 500 iterations for missing data. Imputed for HbA1c (Jardiance N=5 (9.6 %), Placebo N=3 (5.7%)), for FPG (Jardiance N=4 (8.3%), Placebo N=2 (3.8%)).
[c]Least-Square Mean from Analysis of Covariance (ANCOVA) adjusted for baseline value and baseline age stratum (< 15 years vs 15 to < 18 years).
[d]Not evaluated for statistical significance, not part of sequential testing procedure.
[e]p-value=0.0116 (two-sided)

Ex. E at 30–31.

98. On information and belief, and in view of the FDC Paragraph IV Certification, FDC's proposed labeling for the FDC ANDA Products includes the Improved Glycemic Control

Indication on the JARDIANCE® label, as well as the dosage, administration, clinical trial, and other information relating thereto.

99. FDC has infringed at least one claim of the ’810 Patent, pursuant to 35 U.S.C. § 271(e)(2)(A), by submitting, or causing to be submitted, the FDC ANDA, by which FDC seeks approval from the FDA to engage in the manufacture, use, offer to sell, sale, or importation of the FDC ANDA Products prior to the expiration of the ’810 Patent. *See Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*, 731 F.3d 1271, 1278 (Fed. Cir. 2013).

100. FDC has declared its intent to manufacture, use, offer to sell, or sell in the United States or to import into the United States, the FDC ANDA Products in the event that the FDA approves the FDC ANDA. Accordingly, an actual and immediate controversy exists regarding FDC’s infringement of the ’810 Patent under 35 U.S.C. § 271(b).

101. FDC’s manufacture, use, offer to sell, or sale of the FDC ANDA Products in the United States or importation of the FDC ANDA Products into the United States during the term of the ’810 Patent would infringe at least one claim of the ’810 Patent under 35 U.S.C. § 271(b).

102. The FDC ANDA Products, when offered for sale, sold, and/or imported, and when used as directed, would be used in a manner that would directly infringe at least one of the claims of the ’810 Patent either literally or under the doctrine of equivalents.

103. FDC had knowledge of the ’810 Patent as demonstrated by the FDC Paragraph IV Certification directed to the ’810 Patent.

104. In view of at least its package inserts for the FDC ANDA Products, FDC knows or should know that it will induce another’s direct infringement of at least one of the claims of the ’810 Patent, either literally or under the doctrine of equivalents.

105. On information and belief, FDC's proposed prescribing label for the FDC ANDA Products affirmatively instructs healthcare providers to use the FDC ANDA Products in a manner that would directly infringe at least one of the claims of the '810 Patent, either literally or under the doctrine of equivalents. By including such instructions in its proposed label, FDC has taken active steps to encourage direct infringement of the '810 Patent with knowledge that the induced acts constitute patent infringement.

106. On information and belief, FDC's proposed label affirmatively instructs healthcare providers to use the FDC ANDA Products for the patented methods of use claimed in the '810 Patent. By including these affirmative instructions, the offering to sell, sale, and/or importation of the FDC ANDA Products into the United States by FDC would actively induce infringement of at least one of the claims of the '810 Patent, either literally or under the doctrine of equivalents.

107. On information and belief, the offering to sell, sale, and/or importation of the FDC ANDA Products into the United States by FDC would actively induce infringement of at least one of the claims of the '810 Patent, either literally or under the doctrine of equivalents.

108. In the FDC Letter, FDC does not deny that the FDC ANDA Products will infringe the claims of the '810 Patent.

109. The FDC ANDA Products will infringe one or more claims of the '810 Patent.

110. Plaintiffs will be substantially and irreparably harmed if FDC is not enjoined from infringing the '810 Patent.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against FDC and for the following relief:

a. A Judgment be entered that FDC has infringed at least one claim of the '323, '166, '906, and/or '810 Patents by submitting the FDC ANDA;

b. A finding that the manufacture, use, sale, offering to sell within the United States, or importation into the United States, of the FDC ANDA Products prior to the expiration of the ’323, ’166, ’906, and ’810 Patents would infringe those patents under 35 U.S.C. § 271(b).

c. A Judgment be entered that FDC, its officers, agents, servants, employees, and those persons acting in active concert or participation with all or any of them be preliminarily and permanently enjoined from: (i) engaging in the commercial manufacture, use, offer to sell, or sale within the United States, or importation into the United States, of drugs or methods of administering drugs claimed in the ’323, ’166, ’906, and/or ’810 Patents, and (ii) seeking, obtaining, or maintaining approval of the FDC ANDA until the expiration of the ’323, ’166, ’906, and/or ’810 Patents or such other later time as the Court may determine;

d. A Judgment be entered ordering that pursuant to 35 U.S.C. § 271(e)(4)(A), the effective date of any approval of the FDC ANDA under § 505(j) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)) shall not be earlier than the expiration date of the ’323, ’166, ’906, and/or ’810 Patents, including any extensions;

e. If FDC manufactures, uses, offers to sell, or sells the FDC ANDA Products within the United States, or imports the FDC ANDA Products into the United States, prior to the expiration of the ’323, ’166, ’906, and/or ’810 Patents, including any extensions, a Judgment awarding Plaintiffs monetary relief together with interest;

f. A Judgment be entered that this case is exceptional, and that Plaintiffs are entitled to their reasonable attorneys’ fees pursuant to 35 U.S.C. § 285;

g. Costs and expenses in this action; and

h. Such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

*/s/Liza M. Walsh*

Liza M. Walsh
Christine I. Gannon
Patrick S. Salamea
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center,
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
(973) 757-1100

*Attorneys for Plaintiffs*

OF COUNSEL:

Jeanna M. Wacker
Ashley L.B. Ross
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4679

Bryan S. Hales
Gregory Sanford
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

DATE: 8/21/2026

## LOCAL RULE 11.2 AND 40.1 CERTIFICATIONS

I hereby certify that, to the best of my knowledge, the matter in controversy is related to the following actions:

- *Boehringer Ingelheim Pharmaceuticals Inc., et al. v. Lupin Ltd., et al.,* Nos. 21-1485 & 21-1486 (CFC), pending before the United States District Court for the District of Delaware; and
- *Boehringer Ingelheim Pharmaceuticals Inc., et al. v. Ridhisidhi PLLC,* No. No. 26-372 (CFC), also pending before the United States District Court for the District of Delaware.

Respectfully submitted,

*/s/Liza M. Walsh*

Liza M. Walsh
Christine I. Gannon
Patrick S. Salamea
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center,
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
(973) 757-1100

*Attorneys for Plaintiffs*

OF COUNSEL:

Jeanna M. Wacker
Ashley L.B. Ross
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4679

Bryan S. Hales
Gregory Sanford
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

DATE: 8/21/2026

**LOCAL RULE 201.1 CERTIFICATION**

I hereby certify that the above-captioned matter is not subject to compulsory arbitration in that the Plaintiffs seek, inter alia, injunctive relief.

Respectfully submitted,

*/s/Liza M. Walsh*

Liza M. Walsh
Christine I. Gannon
Patrick S. Salamea
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center,
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
(973) 757-1100

*Attorneys for Plaintiffs*

OF COUNSEL:

Jeanna M. Wacker
Ashley L.B. Ross
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4679

Bryan S. Hales
Gregory Sanford
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

DATE: 8/21/2026